# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| THEODORE MOLYNEAUX, | : | |
|---|---|---|
| Plaintiff | : | CIVIL ACTION NO. 3:17-1865 |
| v. | : | JUDGE MANNION |
| MONROE COUNTY | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the court, in this disability discrimination action filed by plaintiff Theodore Molyneaux, is his motion for partial summary judgment pursuant to Fed.R.Civ.P. 56, (Doc. 18). Plaintiff seeks summary judgment with respect to his claims that his former employer, defendant Monroe County, failed to accommodate his disability caused from cancer in violation of the Americans with Disabilities Act and the Pennsylvania Human Relations Act, Counts One and Two of his complaint, (Doc. 1). Based upon the court's review of the motion and related materials, the plaintiff's motion for partial summary judgment regarding his failure to accommodate claims will be **DENIED** since there are genuine issues of material fact.

## I. BACKGROUND

The plaintiff has brought the instant action under the Americans with Disabilities Act, as amended ("ADAAA"), 42 U.S.C. §12131, *et seq*., as well as under the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. §951, *et seq*. Plaintiff filed his complaint on October 12, 2017. (Doc. 1). Specifically, in

Counts I and II, plaintiff raises his claims under the ADAAA and the PHRA, respectively, alleging that Monroe County was aware of his disability and perceived him as having a disability but failed to accommodate it by denying his request to be assigned to a position outside of the Monroe County Correctional Facility ("MCCF") where he worked, and by denying his request for an extension of his leave. He also alleges that Monroe County failed to engage in good faith in the interactive process required by law.

In Counts III and IV, plaintiff raises his claims that he was unlawfully terminated from his employment with Monroe County since his disability was allegedly a motivating factor in the County's decision in violation of the ADAAA and the PHRA, respectively.

After completing discovery, the plaintiff filed his motion for partial summary judgment on April 1, 2019, with respect to his failure to accommodate claims in Counts I and II under the ADAAA and the PHRA, pursuant to Fed. R. Civ. P. 56.[1] (Doc. 18). Plaintiff's motion has been briefed and, a statement of material facts and a response as well as exhibits were filed.

This court's jurisdiction over the plaintiff's federal claims is based on 28

---

[1]Since both parties state the correct standard of review applicable to a summary judgment motion, the court will not repeat it. Suffice to say that to prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact and, that the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See* Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

U.S.C. §1331. The court can exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1337.

## II.  MATERIAL FACTS[2]

The undisputed facts, as supported by the record, establish that, from June of 2006 until November of 2015, the plaintiff worked for Monroe County. He worked in the County maintenance department through 2013, and then he worked as the Assistant Supervisor of Maintenance at MCCF. As part of his work at MCCF, plaintiff had direct contact with inmates at the prison.

In March of 2015, plaintiff was diagnosed with stage IV cancer of the head and neck. Plaintiff's treatment for his cancer began on May 18, 2015. Plaintiff completed chemotherapy on June 29, 2015, and completed radiation therapy on July 18, 2015. During this time, Monroe County was aware that plaintiff had cancer and that he was in treatment for his cancer.

Plaintiff's cancer impaired his ability to work, breathe, swallow, and eat. Plaintiff also was required to have a feeding tube for an extended period of time.

Monroe County outsourced the handling of its FMLA Leave and its Disability Leave to UPMC WorkPartners ("UPMC").

Plaintiff was approved for 12 weeks FMLA leave by Monroe County from

---

[2]The court notes that it only includes material factual statements with support in the record. Further, any denials to plaintiff's statements without citation to the record are not considered. Legal arguments and conclusions are not included.

May of 2015 through August 7, 2015.

Further, under Monroe County's Handbook Policy for Disability Leave, an eligible employee could receive a maximum of 6 months disability leave, which included the maximum 12 weeks of FMLA leave. An employee may also be eligible to request an extension of his FMLA leave for up to six months, if "compelling reasons" exist. A request for an extension had to be approved by the County Commissioners. The decision of whether to grant an employee an extension was solely within the discretion of the County Commissioners. Information in support of the requested extension, such as a note from the treating physician indicating when the employee was eligible to return to work, had to be presented by the employee to the Commissioners to assist in their determination as to whether an extension of leave was warranted.

> Specifically, the County's Disability Leave Policy provided:
>
> A Disability Leave of Absence is defined as a period of absence during which an employee is unable to perform his/her essential job duties due to the employee's non-work related illness or injury, including pregnancy.
>
> All regular full time and regular part time County employees can request such a leave of absence. For employees who qualify under FMLA, the first twelve (12) weeks of approved disability will be considered FMLA leave. The maximum duration that a disability leave of absence can be approved for is six (6) months, which would include the maximum twelve (12) weeks under FMLA. If compelling reasons require an extension, it will be reviewed by the County Commissioners to determine whether extension is warranted and whether it should be granted. Any such extension is solely at the discretion of the County Commissioners.

(Doc. 23-3).

Plaintiff then requested, pursuant to the County's Policy which allowed an employee a maximum of 6 months leave for non-work related illnesses, additional FMLA leave, and his request was approved. His FMLA leave was due to expire on November 7, 2015. At the time his additional leave of absence was going to end, plaintiff had a feeding tube and was not able to return to work at MCCF since the tube would make his exposure to inmates dangerous, nor was he cleared to return to work by his doctor, William S. Scialla, D.O., at this time. (*See* Doc. 23-4, October 2, 2015 report from Dr. Scialla stating that plaintiff's "leave of absence from work is still undetermined."; Doc. 23-5, November 2, 2015 report from LVPG Hematology Oncology/Laura J. Spranklin, D.O.).

Deborah Sibbering was Monroe County's Assistant Director of Human Resources from December of 2012 through March of 2016, and she was responsible for all HR matters regarding the staff at MCCF. Plaintiff testified that he advised Sibbering that his feeding tube was scheduled to be removed in January of 2016, and that he requested another extension of FMLA leave. Plaintiff's request for the leave extension had to be approved by the Monroe County Commissioners. Since Sibbering was plaintiff's only point of contact regarding his request for a leave extension, he stated that he made the request for an extension through her.

It is undisputed that plaintiff indicated to Sibbering that he wanted more time on leave. However, Sibbering testified that plaintiff failed to follow the

5

requisite procedure to request a leave extension beyond the 6 months he had been allotted, despite the fact that she told him the proper procedure multiple times. Sibbering stated that she was continually in touch with plaintiff during his leave of absence, and that she informed him in writing and orally regarding the information he needed to provide to her so that she could present a request for an extension of his leave to the County Commissioners. In particular, Sibbering told plaintiff that he had to get her something from his doctor indicating when he would be reevaluated and indicating a specific date as to how long of an extension plaintiff required. Sibbering stated that she did not receive the stated information from plaintiff. Sibbering stated that since plaintiff did not follow the proper procedure, she could not present a request for a leave extension to the Commissioners.

Plaintiff testified that Sibbering did not forward his request for a leave extension to the Commissioners to see if they approved of it and that he tried to obtain the required documentation. In particular, plaintiff testified that he tried to get Sibbering the additional information regarding his leave extension request and had his doctor fax information to UPMC which turned out to be an incomplete report dated November 2, 2015.

Plaintiff states that the Commissioners had previously granted leave extensions as long as seven weeks to other County employees. However, Bonnie Ace-Sattur, Monroe County's HR Director and its Rule 30(b)(6) designee, testified that a 7-week leave extension had previously been granted to only one employee who provided medical documentation showing that he

would be able to return to full duty work in seven weeks. There is no evidence that the County had approved of 7-week leave extensions to multiple employees.

On October 23, 2015, Sibbering had a telephone conversation with plaintiff and she discussed the County's Disability Leave Policy with him, the steps he needed to take, and the information he needed to provide to her in order for her to take any request for a leave extension to the County Commissioners.

On October 30, 2015, Sibbering sent plaintiff a letter to summarize their October 23, 2015 phone conversation and, informed him that based on the County's FMLA policy, "[he] will have exhausted the maximum leave of absence as of November 7, 2015." She also stated that "[i]n review of your most recent physician's report, dated 10/6/15, the attending physician states that your leave of absence from work is still undetermined. Thus, Sibbering stated:

> Unless we are in receipt of information contrary to your most recent physician's report, we may not be able to continue your employment under the current policy. Therefore, if you have any other information that you would like considered relative to your leave status, it is imperative that you forward same to our attention immediately.

(Doc. 23-7).

Based on Dr. Scialla's October 2015 report, it appears that the County was aware plaintiff was suffering from a medical condition, i.e., head and neck cancer, at that time.

Prior to sending the October 30, 2015 letter, Sibbering stated that she had numerous telephone calls with plaintiff, including the October 23, 2015 call, discussing when his disability leave was set to expire (i.e., November 7, 2015) and what he needed to do to try to extend it.

On November 2, 2015, UPMC, as the administrator of the County's FMLA leave, received a report from plaintiff's doctor. Although plaintiff contends that the November 2015 report UPMC received was not legible, it is indeed legible, upon the court's review. (Doc. 23-6, November 2, 2015 report from Dr. Laura Spranklin, LVPG Hematology Oncology (incomplete report)). However, the report was not complete.

Thus, UPMC requested a complete report from plaintiff's doctor prior to the November 7, 2015 date when plaintiff's leave of absence would be exhausted. Neither UPMC not the County received a complete report from plaintiff's doctor.

On November 17, 2015, Sibbering sent plaintiff a letter stating that he was terminated effective November 7, 2015. The letter stated:

> In accordance with County Policy, "employees who qualify under FMLA the first twelve (12) weeks of approved disability will be considered FMLA leave. The maximum duration that a disability leave of absence can be approved for is six (6) months, which would include the maximum twelve (12) weeks under FMLA"; your leave has exhausted.
>
> In light of the above, your employment with Monroe County terminated at the close of business on, <u>November 7, 2015</u>.

(See Doc. 23-10).

Monroe County waited ten days after November 7, 2015, the date that

8

plaintiff's disability leave expired, before it terminated his employment since it gave plaintiff additional time to provide the requisite information for the County Commissioners to consider in deciding whether to extend his leave.

In July of 2018, Ace-Sattur then obtained a complete copy of the report regarding plaintiff's November 2, 2015 appointment with his doctor, Dr. Spranklin. (Doc. 23-5). The complete report, however, did not specify a date on which plaintiff would be able to return to work.

Plaintiff testified that he would have been able to return to work at MCCF in late December of 2015, i.e., between Christmas of 2015 and New Year's Day of 2016, when his feeding tube fell out. However, the County points out that the medical evidence in the record did not indicate any date on which plaintiff could return to work. In fact, the County states that plaintiff's contention that he could have returned to work in December of 2015 is belied by the claim he submitted on December 10, 2015 seeking total disability benefits from his insurance provider. (Doc. 23-8, Application to United of Omaha Life Insurance Company for disability benefits). On the application for disability benefits, plaintiff's treating physician marked as "indefinite" the date which plaintiff might be able to return to work at any job.

At the time of his termination, plaintiff testified that he was still suffering from cancer of the head and neck and, that he was still receiving medical treatment. However, the County points out that the medical evidence in the record did not indicate that plaintiff was receiving treatment for his cancer at the time of his termination. Rather, the medical evidence shows that plaintiff

was being seen by doctors and that his cancer was still being evaluated at the time of his termination. The County also indicates that at the time of his termination, plaintiff was not cleared to return to work by his doctors. In fact, Dr. Spranklin's November 2, 2015 report indicated that plaintiff's recovery had been slow and that he was still relying on the feeding tube for nutrition. The report also indicated that plaintiff's cancer treatment had been completed, and that he was scheduled to return for a follow-up exam in 6 weeks after he had a CT scan as well as other tests.

Although plaintiff states that Sibbering did not present his request for an accommodation in the nature of a leave extension to the Commissioners for their consideration, Sibbering testified that she did not have a proper request to present to the Commissioners since plaintiff did not provide her with the required information to support a request.

## III. DISCUSSION

Plaintiff alleges that the County terminated him based on his known and perceived cancer disability in violation of the ADAAA and the PHRA. He also alleges that the County failed to provide a reasonable accommodation for his disability. At issue for plaintiff's present motion is whether plaintiff is entitled to summary judgment with respect to his failure to accommodate claims.[3]

---

[3]The "analysis of an ADA claim applies equally to a PHRA claim." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).

Plaintiff claims that Monroe County failed to give him reasonable accommodations for his cancer disability by denying his request to be assigned to a position outside of MCCF, and by denying his request for an extension of his leave. However, plaintiff notes that his alleged request for an accommodation to a position with the County outside of MCCF is not part of his instant summary judgment motion since the County disputes that he made any such request. Further, plaintiff alleges that the County did not provide reasonable accommodations by failing to engage in good faith in the interactive process.

As the court in Reyer v. Saint Francis Country House, 243 F.Supp.3d 573, 594 (E.D.Pa. 2017), explained:

> The adverse employment decisions barred by the ADA include "not only adverse actions motivated by prejudice and fear of disabilities, but also ... failing to make reasonable accommodations for a plaintiff's disabilities." Mercer v. Se. Penn. Transit Auth., 26 F.Supp.3d 432, 440 (E.D.Pa. 2014) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)). As such, "[a]n employer's failure to reasonably accommodate the disabilities of an otherwise qualified employee constitutes an adverse employment action under the third element of the prima facie case of generic disability discrimination." Sharbaugh v. W. Haven Manor, LP, 2016 WL 6834613, at *8 (W.D.Pa. Nov. 21, 2016).

Additionally, "the ADA defines discrimination to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose

11

an undue hardship on the operation of the business.'" *Id*. (citations omitted). A "qualified individual", for purposes of the ADA, can "perform the essential functions" of his position "with or without reasonable accommodation." §12111(8).

"[F]ailure to accommodate claims 'do not require that an employer's action be motivated by a discriminatory animus directed at the disability and, therefore, the McDonnell Douglas test does not apply." *Id*. at 595 (citations omitted). Additionally, "a plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA and RA." Muhammad v. Court of Common Pleas of Allegheny Cnty., Pa., 483 Fed.Appx. 759, 763 (3d Cir. 2012); "To make out such a claim, a plaintiff must show that the accommodation he seeks is reasonable, ..., i.e., that it is "necessary to avoid discrimination on the basis of disability." Muhammad, 483 Fed.Appx. at 763 (internal citation omitted) (quoting 28 C.F.R. §35.130(b)(7)). Plaintiff has the "initial burden of demonstrating that his requested accommodations were reasonable, i.e., necessary to permit him meaningful participation; upon making such a showing, the burden shift[s] to the defendants to demonstrate that the requested accommodations were unreasonable." *Id.* (citations omitted).

The court in Decker v. Alliant Technologies, LLC, 871 F.Supp.2d 413, 430-31 (E.D.Pa. 2012), detailed the elements of a failure to accommodate claim, and stated:

"Discrimination under the ADA encompasses not only adverse

actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor, 184 F.3d at 306. For an employer "to be found liable for discrimination on the basis of failure to accommodate, the plaintiff must prove '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination ... [which] in this context include[s] refusing to make reasonable accommodations for a plaintiff's disabilities.'" Hohider, 574 F.3d at 186–87 (quoting Williams, 380 F.3d at 761) (internal quotations omitted).

"To prove that an employer failed to provide reasonable accommodations by failing to engage, in good faith, in an interactive process, a plaintiff must show that "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Emmell v. Phoenixville Hospital Company, LLC, 303 F.Supp.3d 314, 328-29 (E.D.Pa. 2018) (citations omitted).

> To fulfill the second requirement, the employee's request for accommodation does not need to be specific or contain "magic words." When the "'employer knows of the disability and the employee's desire for an accommodation, it makes sense to place the burden on the employer to request additional information' to determine whether a reasonable accommodation is available."
>
> Therefore, the employee has effectively requested accommodation when he or she has provided the employer with sufficient information to know of the employee's disability and desire for accommodation or when circumstances would cause a "reasonable employer to make appropriate inquires about the

13

possible need for an accommodation."

*Id*. at 329 (internal citations omitted).

"Once the employee has provided this proper notice, under the third requirement, the employer must make a good faith effort to engage in an interactive process to determine a reasonable accommodation. *Id*. (citation omitted). "[U]nder the fourth prong, a plaintiff must show that a reasonable accommodation in fact existed." *Id*. (citation omitted).

"If a plaintiff alleges facts that, if proven, would show that an employer should have reasonably accommodated an employee's disability but failed to do so, he establishes that the employer has discriminated against him." Johnson v. McGraw-Hill Companies, 451 F.Supp.2d 681, 700 n. 11 (W.D.Pa. 2006).

Plaintiff argues that Monroe County denied his request for accommodation regarding an extension of leave since neither Sibbering nor Ace-Sattur presented it to the County Commissioners, who were authorized to grant his request, and since the HR personnel allowed his leave to expire thus causing his termination. Plaintiff further states that Sibbering refused to timely present his request for an extension of leave to the Commissioners, and thus, "foreclosed any possibility that his accommodation request would be considered." He states that Sibbering "did nothing [regarding his request] other than send [him] confusing, untimely and incomplete letters repeating the portion of [the County's] policy that did not include a provision for an extension beyond the six months." As such, plaintiff contends that the County did not

provide him with additional leave, which he claims was a reasonable accommodation, but rather terminated his employment in violation of the ADAAA.

Plaintiff also argues that even though his requested accommodation would have meant an extension of his absence from work, this does not mean that he was not qualified. He states that "[f]ederal courts have recognized that a leave of absence may constitute a reasonable accommodation under the ADA where 'applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future.'" For support, plaintiff cites to Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004). However, in Conoshenti, *id*., the Third Circuit pointed out that the employee had to be able to perform his essential job functions in the near future, such as by presenting evidence that showed his leave would be temporary, in order for a leave of absence to constitute a reasonable accommodation under the ADA.

Plaintiff states that his request for an extension of leave prior to November 7, 2015, when his approved leave was set to expire, would have been for no more than 6 weeks until his feeding tube was removed. He states that Monroe County granted 7-week extensions in the past, and that an extension would not have caused the County any hardship since there were no problems with his replacement at the prison. Plaintiff states that if the County granted his requested accommodation of a leave extension, he would have been able to resume his work at the prison after the extension, and

15

therefore, he should be considered a "qualified individual."

There is no dispute that plaintiff's cancer was a disability under the ADAAA and that it caused substantial limitation of his ability to engage in major life activities, including, breathing, working, eating and swallowing. The evidence, however, is disputed as to material facts regarding plaintiff's failure to accommodate claims. As detailed above, the evidence is disputed as to whether plaintiff was otherwise qualified to perform the essential functions of his job at MCCF, with or without reasonable accommodations by the County, whether plaintiff presented a proper request for an accommodation for an extension of leave to the County and, whether he could have been reasonably accommodated if he was able to perform his essential job functions in the near future.

Although plaintiff testified that he requested an extension of leave through Sibbering, Sibbering stated that she did not forward any request to the Commissioners since plaintiff did not make a proper request and since she repeatedly told plaintiff that he needed additional information to substantiate a request for an extension. Specifically, Sibbering testified in her deposition that during her conversations with plaintiff she explained to him that he needed information from his doctor indicating that he may be able to return to work in a specific time frame to support an extension of leave request. She stated that since plaintiff did not give her "anything to take to the Commissioners", she could not present them with an "open-ended" request for an extension of leave. Sibbering further stated that if plaintiff had given her

16

some documentation from his doctor, "the Commissioners would have approved [of a request for a leave extension], but [she] couldn't just [ask for an extension based on] [her] word." Further, Sibbering stated that she delayed sending plaintiff the November 17, 2015 letter terminating his employment for 10 days after plaintiff's leave ended since she was waiting for documentation from plaintiff and/or his doctor indicating a date when he would be reevaluated, to present to the Commissioners so that an extension request on his behalf would have a date certain.

As such, the County contends that plaintiff failed to provide it with sufficient information and did not make a proper request for an accommodation of an extension of leave.

The court finds disputed material facts as to whether plaintiff made a proper accommodation request for an extension of leave consistent with the County's Policy that could be presented to the Commissioners for their consideration.

The evidence is also disputed whether plaintiff was capable of performing the essential functions of his job at MCCF, with or without reasonable accommodations, since he still had a feeding tube through the end of 2015 and his doctor said "[h]e wanted to maybe put it back in", and since there is no evidence that plaintiff's doctors had cleared him to return to any work during the relevant time. Further, plaintiff's December 10, 2015 application for total disability benefits with United of Omaha Life Insurance Company indicated that plaintiff's return to work, in his regular occupation and

any occupation, was "indefinite." As such, there are material issues of fact regarding whether plaintiff was a qualified individual able to perform the essential functions of his prison job with or without accommodations. *See* Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006) (if contested evidence is submitted as to essential job functions, "the fact issue as to 'essential function' must be decided by a jury.").

Additionally, there exists a material issue of fact regarding whether providing plaintiff with the accommodation of an extended disability leave would have been reasonable since at the time his disability leave expired on November 7, 2015, his physician did not provide the County with an expected date on which plaintiff could return to work. Thus, the requested accommodation could have imposed an undue hardship regarding the County's operation of the prison.

Summary judgment is also inappropriate because there are genuine disputes regarding the County's engagement in the interactive process. Plaintiff merely speculates, without specific evidence, that the County did not make reasonable efforts to engage with him in the interactive process. *See* Hohider v. United Parcel Service, Inc., 574 F.3d 169, 193 (3d Cir. 2009) (Court stated that an employer's "failure to engage in the interactive process, in itself, does not constitute [an ADA] violation.").

Thus, plaintiffs motion for partial summary judgment with respect to his failure to accommodate claims under the ADA and the PHRA, Counts I and II, will be denied since disputed material facts exist.

## IV. CONCLUSION

Based on the foregoing, reasonable disputes as to the material facts exist and plaintiff's motion for partial summary judgment, (Doc. 18), will be denied. An appropriate order shall issue.

                                            s/ *Malachy E. Mannion*
                                            **MALACHY E. MANNION**
                                            **United States District Judge**

**Date: January 8, 2020**

17-1865-01.wpd